UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN ANTHONY HAWKINS-EL,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM HYATTE, et al.,<br><br>Defendants. | CAUSE NO. 3:21-CV-527-JD-MGG |

OPINION AND ORDER

John A. Hawkins-El, a prisoner without a lawyer, filed an amended complaint. ECF 5. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks and citation omitted).

On February 17, 2021, after the "formal facility afternoon count" was taken at the Miami Correctional Facility (MCF),[1] Hawkins was released from segregation and went to speak with his counselor. ECF 5 at 2. As he was leaving her office, an "unidentifiable" offender assaulted and stabbed Hawkins. *Id*. He alleges this happened because National Guard members working at the prison buzzed offenders into the unit without asking them to identify themselves. According to Hawkins, there was "no custody on the unit, to log in, who's leaving 'to and fro' from the unit, as daily operation suppose[d] to function, leaving only the National Guard to control the Unit from the Pod." *Id*. at 2–3. On the day he was assaulted, "[n]o officer was on the floor . . .." *Id*. at 3. Hawkins alleges an unknown shift supervisor was responsible for the attack because he "had the authority to assign custody to each housing at the Facility (M.C.F.)," but the "'unknown plain clothes officer' that conducts the formal afternoon facility count was removed from the unit (JHU), leaving the unit unsupervised and unintended (sic)." *Id*. He alleges the facility had to be placed on lockdown until additional staff arrived.

In addition, Hawkins claims William Hyatte (the Warden) was negligent because there was "no custody" on the unit the day he was assaulted. Hawkins states the Warden was previously aware of the staffing issues at MCF, which is why he called in the National Guard for "manpower." *Id*. at 4. Hawkins has sued the Warden plus

---

[1] The count was taken by an "'unknown' (unidentifiable) 'plain clothes officer.'" ECF 1 at 3.

several John Doe National Guardsmen and John Doe Correctional Officers for monetary damages.[2]

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. As this circuit has explained:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . .. We have previously held that statements like those made by [plaintiff] are insufficient to alert officers to a specific threat. In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were . . .. This lack of specificity falls below the

---

[2] He further asks the "Federal Government" to shut down MCF. This form of relief is not available against any of the defendants Hawkins names or describes.

>required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (internal citations and footnote omitted).

With regard to the Warden, as noted in this court's prior screening order, officials cannot be held liable simply because they hold supervisory positions at the prison. That is not a viable basis for imposing liability under 42 U.S.C. § 1983. J.*K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). Liability under 42 U.S.C. § 1983 is based on personal responsibility, and supervisory defendants cannot be held liable for the misdeeds of other prison staff. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Such staff can be held liable for deliberate indifference only when they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Although Hawkins claims the Warden was "aware" of a general staffing issue, he has not alleged, nor is it reasonable to infer, that he knew there was no custody officer on the unit the day of the incident, that the National Guardsmen were letting offenders pass between units without checking their identities, or that there was any particular threat to Hawkins. Moreover, even if it is true, as Hawkins asserts, that some employees were not doing their jobs correctly and that there was a shortage of prison staff, there is no suggestion the Warden was being deliberately indifferent to any overall staffing concerns. In fact, Hawkins admits the Warden attempted to resolve the problem by

calling in the National Guard for additional help. Thus, the complaint does not state a claim for relief against the Warden.

The same is true of the John Doe shift supervisor. Although Hawkins alleges he was responsible for assigning custody staff to each unit and that an officer tasked with performing the count was removed that afternoon after counting occurred, there is no indication the shift supervisor himself knew about the removal. Moreover, even if he did, there is no suggestion that he knew Hawkins was at particular risk of being attacked, that he facilitated the stabbing in any way, or that he turned a blind eye to events leading up to the incident. Of note, according to Hawkins, the unit was placed on lockdown after the officer was removed until additional staff arrived, so it is not reasonable to infer the shift supervisor was deliberately indifferent towards the safety of the unit as a whole as Hawkins speculates. Thus, the complaint does not state a claim against the John Doe shift supervisor.

Hawkins has also sued various additional unidentified John Doe National Guardsmen and Correctional Officers; however, he has only specifically described the actions of two such individuals—a National Guardsman who buzzed various offenders into the unit on the day he was stabbed without asking them to identify themselves and an unknown "plain clothes officer" who conducted the count that day but then was pulled off the unit afterwards.[3] There is no indication either of these individuals were

---

[3] He lists the total number of defendants as "7/8" (ECF 1 at 1), but other than the Warden, the John Doe shift supervisor, the National Guardsman who buzzed in the offenders, and the "plain clothes officer" responsible for the count, he does not describe or identify the other unnamed defendants in any way. "[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff."

actually aware of any substantial threat to Hawkins's health or safety or failed to take appropriate steps to protect him from any specific danger. At most, the complaint suggests the John Doe defendants may have performed their (temporary, in the case of the National Guardsman) duties negligently. However, "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to support an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Thus, Hawkins has not stated a claim against any of the John Doe defendants either.[4]

Finally, Hawkins has filed a motion asking the court to "release" the names of the individuals who were assigned to the MCF units described above and were working there on February 17, 2021. ECF 6. However, because the complaint does not state any claims against the defendants even if they had been named, the motion will be denied as unnecessary.

For these reasons, the court DENIES the motion to identify defendants (ECF 6) and DISMISSES this case pursuant to 28 U.S.C. § 1915A because the complaint does not state any claims upon which relief can be granted.

---

*Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted). Therefore, these defendants will be dismissed.

[4] Moreover, to the extent Hawkins claims these defendants violated prison policies by failing to perform counts or operate the doors correctly, he has not stated a claim. A violation of prison policy or other state law does not give rise to a federal constitutional claim. *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

SO ORDERED on November 2, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT